UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELDEN GUERRERO | CIVIL ACTION |
| V. | NO. 15-1135 |
| JEH JOHNSON, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL. | SECTION C(3) |

## ORDER AND REASONS

### I. Introduction

Before the Court is a question of statutory interpretation on defendant's motion to dismiss. *See* Rec. Doc. 20. The interpretation in question was central to the United States Citizenship and Immigration Service's ("USCIS'") denial of petitioner Elden Guerrero's I-485 Application to Register Permanent Residence or Adjust Status. *See* Rec. Doc. 1-2 at 51–56. The specific question is whether a statute providing for temporary protected status to certain persons alters another statute's general prohibition on adjusting an alien crewman's[1] nonimmigrant status to that of a person admitted for permanent residence. *See* 8 U.S.C. §§ 1254a, 1255(c)(1). The Court has jurisdiction under the Administrative Procedure Act. 5 U.S.C. § 701 *et seq.*[2]

A careful and holistic reading of the relevant statutes conducted pursuant to *Skidmore* leads the Court to conclude that USCIS erred in denying Guerrero's I-485 application on

---

[1] Following the practice of other courts, the Court has attempted to limit its use the term "alien" only to the extent necessary to remain consistent with statutory language, regulations, and the text of cited case law. *See United States v. Cano-Lopez*, 2015 WL 3559179 n. 1 (6th Cir. June 8, 2015) ("using the term 'alien' to refer to other human beings is offensive and demeaning").

[2] While not addressed in the motion to dismiss or the briefs, the Court is satisfied that Guerrero has exhausted his administrative remedies and that the Court is properly exercising subject matter jurisdiction over a final agency action on Guerrero's I-485 application. *See* 5 U.S.C. § 704 (requiring final agency action in order for judicial review to be available); *see also* 8 C.F.R. § 1245.2(c) ("No appeal shall lie from the denial of an [I-485] application by the director but such denial shall be without prejudice to the alien's right to renew his or her application under 8 CFR part 240"); *see also* Rec. Doc. 1-2 at 51–56 (Notice of Decision to Guerrero not mentioning any administrative appeal remedy).

statutory grounds. *See* Rec. Doc. 1-2 at 51–56. Because Guerrero's petition for writ of mandamus appears to have merit, the Court will deny the defendant's motion to dismiss. Furthermore, the Court is of the opinion that—by the facts stated as "undisputed" in defendant's motion to dismiss (Rec. Doc. 20-2 at 1–5)—summary judgment for Guerrero is likely warranted pursuant to Federal Rule of Civil Procedure 56(f)(3). *See Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 145 n.29 (5th Cir. 2004) (sua sponte summary judgment without Rule 56 motion permissible so long as fair notice and opportunity to respond provided to targeted party). Accordingly, the Court will order defendant to show cause as to why the Court should not grant summary judgment and issue a writ of mandamus for petitioner in this case.

## II. Factual and Procedural Background

The parties do not appear to dispute the material facts in this case. *See* Rec. Docs. 1, 20-2 at 1–5, and 23 at 2–3. Elden Guerrero is a native and citizen of Honduras. *See* Rec. Doc. 23 at 2. Guerrero originally entered the United States as an alien crewman on a C-1 visa in 1998. *See id.*; *see also* Rec. Doc. 20-4. Guerrero overstayed his C-1 visa; however, within months of his visa expiring applied for and was granted an application for temporary protected status and has lawfully remained in the United States under that status for the more than fifteen years since. *See* Rec. Doc. 23 at 2. In 2012, Guerrero's U.S. citizen spouse filed an I-130 Petition for Alien Relative, which was approved. *See id.* Guerrero then filed an I-485 Application to Register Permanent Residence, which the USCIS denied on the grounds that Guerrero's initial entry had been as an alien crewman and the statute governing adjustment to permanent resident status explicitly prohibits adjustment for alien crewmen. *See id.* Citing to various non-binding judicial opinions, Guerrero's subsequent I-290B motion to reopen his I-485 application urged the USCIS to interpret the provisions of 8 U.S.C. § 1254a—the statute providing for his temporary protected

status—as effectively overriding his original alien crewman status and granting him lawful nonimmigrant status for the purpose of his I-485 application. *See* Rec. Doc. 1-2 at 51–56. The notice dismissing Guerrero's I-290B motion restated Guerrero's argument, stated that Guerrero was "statutorily ineligible for Adjustment of status" under § 1255(c)(1), and noted that the lead circuit court of appeals case supporting Guerrero's argument "is not recognized in the 5th Circuit which is where our jurisdiction falls." *Id.*

Guerrero now seeks a writ of mandamus under the Administrative Procedure Act ordering the USCIS to reopen his I-485 application and proceed with a corrected interpretation of §§ 1254a and 1255.

### III. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Here, the parties do not appear to disagree that a dispute over the USCIS Field Office Director's interpretation of the Immigration and Nationality Act ("INA") is the only possible insuperable bar to relief for Guerrero. *See* Rec. Doc. 1 at 2; *see also* Rec. Doc. 20-2 at 5. Confronted with an agency interpretation of a controlling statute, the Court affords deference to that interpretation depending on the precedential force of the Field Office Director's decision and interpretation. *See Dhuka v. Holder*, 716 F.3d 149, 154–55 (5th Cir. 2013). Here, it appears that

the USCIS interpretation of §§ 1254a and 1255(c)(1) in Guerrero's case does not stem from a precedential decision of the Board of Immigration Appeals or from an agency rule. *See* Rec. Docs. 1-2 and 20-2 at 4, 21. Accordingly, the Court is of the opinion that its assessment of the USCIS' interpretation is properly conducted pursuant to *Skidmore*, not *Chevron*. *See Dhuka*, 716 F.3d at 154 (applying *Skidmore* deference for non-precedential Board of Immigration Appeals decision); *see also Flores v. U.S. Citizenship and Immigration Services*, 718 F.3d 548, 551 (6th Cir. 2013) (addressing deference to be afforded to USCIS decision).

Under *Skidmore*, the weight the Court must give to USCIS' interpretation here depends "upon the thoroughness evident in [the USCIS'] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Dhuka*, 716 F.3d at 154. Here, USCIS' Notice of Decision does not appear to contain thorough consideration of Guerrero's arguments, nor depend on earlier (or later) pronouncements about the interaction of §§ 1254a and 1255(c)(1). Instead, the Notice of Decision simply concludes that Guerrero is ineligible because of § 1255(c)(1). The only reasoned response to Guerrero's argument is an acknowledgement that a decision supporting Guerrero's case from the Sixth Circuit "applies in the 6th Circuit, however, it is not recognized in the 5th Circuit which is where our jurisdiction falls." Rec. Doc. 1-2 at 51–56. The Notice of Decision does not clarify whether the Fifth Circuit has actively disagreed with the Sixth Circuit's reasoning or merely has not passed on the issue. *See id.* In sum, the USCIS Field Director's decision does not reflect thorough reasoning or the exercise of reasoned discretion based on past and future agency action. Accordingly, the Court need not afford significant deference to the USCIS Field Director's conclusion that § 1255(c)(1) is a statutory bar to relief in Guerrero's case.

### IV. Discussion

To the Court's knowledge, this is a novel question of statutory interpretation. In a matter of statutory interpretation, a court begins "with the plain language and structure of the statute. *Coserv Ltd. Liability Corp. V. Southwestern Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003); *see also Crandon v. U.S.*, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"). For the reasons stated below, the Court finds that a holistic reading of the text and structure of the relevant statutory provisions contravenes the USCIS' Field Director's interpretation, meaning Guerrero has at least stated a plausible claim for relief.

A. Relevant Statutory Provisions

The plain language of 8 U.S.C. § 1254a makes clear that Congress enacted the statute with the humanitarian aim of providing relief to certain nationals of foreign countries afflicted with environmental disaster, armed conflict, or other "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety." 8 U.S.C. § 1254a(b)(1). The Attorney General is afforded broad discretion to designate such countries and determine the duration of such designations. *See generally* 8 U.S.C. § 1254a(b). As to the protections afforded by the statute, persons currently granted temporary protected status may not be removed from the United States and are authorized to work in the United States. *See* 8 U.S.C. § 1254a(a). Furthermore, "*for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.*" 8 U.S.C. § 1254a(f)(4) (emphasis added). The statue also contains the following "clarification":

5

> Nothing in this section shall be construed as authorizing the Attorney General to deny temporary protected status to an alien based on the alien's immigration status or to require any alien, as a condition of being granted such status, either to relinquish nonimmigrant or other status the alien may have or to execute any waiver of other rights under this chapter. *The granting of temporary protected status under this section shall not be considered to be inconsistent with the granting of nonimmigrant status under this chapter*.

8 U.S.C. § 1254a(a)(5) (emphasis added).

As for 8 U.S.C. § 1255, it provides the basic criteria and process for applications to adjust from nonimmigrant status to immigrant admitted for permanent resident status. "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). In pertinent part, § 1255 "shall not be applicable to (1) an alien crewman." 8 U.S.C. § 1255(c). With one exception, the language of § 1255 does not apparently contemplate exceptions to the general bar on alien crewman. *See* 8 U.S.C. § 1255(i). The probable policy aim of § 1255(c)(1) is to remove any incentive for alien crewman to "jump ship." *See Guinto v. INS*, 774 F.2d 991, 992 (9th Cir. 1995).

B. Arguments of the Parties and Analysis

Guerrero contends that § 1254a(f)(4) operates as an override of the prohibitions on adjustments contained in § 1255, effectively making it so that any person with a current temporary protected status may seek adjustment from the Attorney General so long as they also meet requirements (1) and (3) of § 1255(a). *See* Rec. Doc. 1 at 5. Guerrero contends that the granting of his temporary protected status application—which

6

truthfully stated he was originally admitted to the United States as an alien crewman—acted as a waiver of his prior inadmissibility. *See* Rec. Doc. 23 at 7. According to Guerrero, the USCIS' interpretation would lead to absurd results. *See id.* at 6. In order to seek permanent residence, Guerrero would have to return to the very conditions in Honduras that Congress decided he could be protected from through temporary protected status. *See id*.

Defendant contends that § 1255(c)(1) is not altered by § 1254a, because no provision in § 1254a specifically overrides § 1255(c)(1)'s explicit prohibition on adjustments for alien crewman. *See* Rec. Doc. 20-2 at 10–12. Particularly where § 1255 already provides for one limited avenue for alien crewman to get around the general prohibition, the defendant contends Congress would have written more exactly had it wanted to disturb the effect of § 1255(c)(1). *See id.* at 15. According to the defendant, the "lawful status" language of § 1254a(f)(4) at best provides limited relief to non-alien crewman otherwise prohibited under § 1255(c)(2), but is not intended to apply wholesale to § 1255. *See id.* at 11. The defendant also points to the final sentence in § 1254a(a)(5) to argue that Congress contemplated nonimmigrants with temporary protected status as having two concurrent statuses, not just temporary protected status. *See id.* at 12.

The Court is of the opinion that Congress' plain intent in § 1254a(f)(4) was to clear the way for persons with temporary protected status to seek adjustment pursuant § 1255, notwithstanding any prior status, so long as they satisfy the other requirements listed in § 1255(a). The Court finds persuasive the Sixth Circuit's decision in *Flores v. U.S. Citizenship and Immigration Services*, in which an El Salvadorian entered the United States without inspection, was then granted temporary protected status on an

7

application disclosing his uninspected status, and later was denied an application for adjustment under § 1255 because of his original uninspected status. 718 F. at 549–50.[3] The *Flores* court interpreted § 1254a(f)(4) "exactly as written—as allowing [the petitioner] to be considered as being in lawful status as a nonimmigrant for purposes of adjustment of status under § 1255." 718 F.3d 548, 553 (6th Cir. 2013). The *Flores* court rejected the argument, put forward by defendant here, that § 1254a(f)(4) is only meant to apply to § 1255(c)(2). *See id.* ("[w]e see no reason why Congress would have written the exception in § 1254a(f) the way it did if it actually has to do only with § 1255(c)(2)—a quite specific reference—rather than what the statute actually says, which is § '1255'"). The Court agrees that "[t]he language of § 1254a is written as applying to § 1255, as a whole" and accordingly will "interpret it as written." *Id.*

That § 1255 specifically addresses alien crewman perhaps makes this case a little closer than *Flores.* Alien crewman status, unlike uninspected entrant status, can be a lawful nonimmigrant status (nonetheless barred from adjustment under § 1255(c)(1)) and one could argue that all the language of § 1254a(f)(4) accomplishes in a case like Guerrero's is to remove "overstayed" from Guerrero's alien crewman status. The Court, however, is not convinced Congress had such a narrow intent in including § 1254a(f)(4). Rather than enacting § 1254a(f)(4) to carefully interact with the finer details of nonimmigrant visa statuses, the broad and sweeping language of § 1254(f)(4) much more likely was meant to decisively and generally address the availability of adjustment to

---

[3] The Court notes that the Eleventh Circuit in *Serrano v. U.S. Attorney Gen.*, 655 F.3d 1260 (11th Cir. 2011), arrived at a different interpretation of § 1254a than the *Flores* court. Besides finding the *Serrano* court's analysis less thorough and persuasive than the *Flores* court's, the Court notes that the few court's outside of the Eleventh Circuit passing on §§ 1254a and 1255 have followed the reasoning in *Flores*. *See, e.g.*, *Medina v. Beers*, 65 F.Supp.3d 419 (E.D.Pa. 2014); *see also Ramirez v. Dougherty*, 23 F.Supp.3d 1322 (W.D.Wash. 2014).

those with temporary protected status. It is unreasonable to conclude that Congress—in order to give people with temporary protected status open access to adjustment procedures—would have to either amend § 1255 to specifically address the alien crewman issue in the case of applicants with temporary protected status or specifically repeal the applicability of § 1255(c)(1) in the provisions of § 1254a. The Court finds it much more reasonable to simply give effect to the broad and plain language of § 1254a(f)(4).

Furthermore, the Court rejects the defendant's argument that § 1254a(a)(5) demonstrates that Congress intended those already having a nonimmigrant status to be bound by the terms of that status for the purposes of § 1255. The *Flores* court's decision does not address § 1254a(a)(5); however, a contextual reading of § 1254a(a)(5) that cuts against the defendant's proposed interpretation appears in the Fifth Circuit's decision in *U.S. v. Orellana*. 405 F.3d 360, 364 (5th Cir. 2005). In *Orellana*, an uninspected El Salvadorian later granted temporary protected status faced criminal charges for possessing a firearm as an illegal alien. *See id.* at 361–62. While the *Orellana* court ruled against the Government in large part by reference to the rule of lenity, it also conducted an instructive assessment of the text of § 1254a. *See id.* at 363–65. By the *Orellana* court's summary, the effect of § 1254a(a)(5) is to make it so "[a]n alien registered for TPS is not required to surrender non-immigrant or any other status that he may previously have been granted, and may acquire non-immigrant status if he has not already done so." *Id.* The *Orellana* interpretation accounts for all the text in § 1254a(a)(5), which demonstrates that Congress's concern in the provision was not to irrevocably bind persons to their original status, so much as prevent the Government from either using the

prospect of a temporary protected status grant to coerce an applicant into given up a prior status or using the existence of temporary protected status as grounds for denying a new status application. The defendant's proposed interpretation requires reading the last sentence of § 1254(a)(5) in isolation from the rest of the text in the provision, something the Court will not do.

As to the broader policy aims of the two statutes and the "statutory scheme as a whole," the *Flores* court noted that § 1254a grants the Attorney General broad authority to waive certain inadmissibility grounds where doing so would advance "humanitarian purposes, [] assure family unity, or when it is otherwise in the public interest. 718 F. at 553 (quoting § 1254a(c)(2)(A)(ii)). Under what appears to be a startlingly analogous set of circumstances, the *Flores* court noted that the petitioner:

> seems to be the exact type of person that Congress would have in mind to allow adjustment of status from [temporary protected status] beneficiary to [lawful permanent resident status]. He has been in the United States for about fifteen years. He has roots here. His wife and minor child are here. They are both United States citizens. He is of good moral character and a contributing member of society. He has waited his turn for an independent, legal, and legitimate pathway to citizenship, through the immediate relative visa application. If the statutes are interpreted as the Government argues they should be, the result would be absurd. The Government is essentially telling him that he is protected and can stay here, but that he will never be allowed to become [a permanent resident], even for an independent basis. Under the Government's interpretation, Mr. Suazo would have to leave the United States, be readmitted, and then go through the immigration process all over again. This is simply a waste of energy, time, government resources, and will have negative effects on his family—United States citizens.

*Id.* at 555–56.

The Court does not ignore the likely policy aim of Congress in § 1255(c)(1) to discourage crewman from "jumping ship." *See Guinto*, 774 F.2d at 992. But the Court is not convinced of the preeminence of this policy in the face of the humanitarian aims of § 1254a. Furthermore, the Court is not convinced that its interpretation will lead to

unacceptable outcomes, such as encouraging nonimmigrants to overstay their visas. In contrast to the picture painted by defendant, where *all* nonimmigrant visa holders would have the incentive to overstay and somehow thereby escape the terms of their visa, a situation like Guerrero's only arises where the nonimmigrant has been granted temporary protected status. The alien crewman prohibition in § 1255(c)(1) and the general requirements regarding status in § 1255 remain in full effect, except where the applicant for adjustment in question has current temporary protected status, not to mention an independent basis for obtaining permanent residence.

C. Conclusion

      Without a motion for summary judgment before it, the Court hesitates to declare that Guerrero is definitively entitled to relief. Because the Court concludes, however, that the benefits and protections of § 1254a make § 1255(c)(1) inapplicable in the case of an adjustment application by a person with temporary protected status, Guerrero has at least stated a plausible claim for relief. Dismissal of his petition, therefore, is not warranted. Furthermore, based on the facts provided by defendant in its motion to dismiss (Rec. Doc. 20-2 at 1–5), the Court is prepared and gives defendant notice of its intent to enter summary judgment sua sponte for Guerrero. The Court will provide defendant with a reasonable time to respond before doing so.

Accordingly,

      IT IS ORDERED that defendant's motion to dismiss is DENIED. Rec. Doc. 20.

IT IS FURTHER ORDERED that defendant show cause as to why this Court should not grant summary judgment for the petitioner pursuant to Rule 56(f)(3) by **November 4, 2015 at 4:30pm**.

New Orleans, Louisiana, this 5th day of October, 2015

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE